FILED
2014 Jan-31 PM 03:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **GEORGE EDWARD WILLIAMS,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**CAROLYN W. COLVIN,**[1]<br>**ACTING COMMISSIONER,**<br>**SOCIAL SECURITY**<br>**ADMINISTRATION,**<br><br>**Defendant.** | ) | **Case No.: 7:12-CV-4101-VEH** |

---

**MEMORANDUM OPINION**

Plaintiff George Edward Williams brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2] Mr. Williams timely

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. ("Any actions instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI

pursued and exhausted his administrative remedies available before the Commissioner. The case is ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Williams was 52 years old at the time of the administrative hearing before the Administrative Law Judge ("ALJ"). (Tr. 34, 39). He has an eleventh grade education. (Tr. 44). He has past relevant work as a construction worker and material handler. (Tr. 34). He claims he became disabled on 05/15/2010, due to: arthritis and high blood pressure. (Tr. 177). His last period of work ended on May 15, 2010. *Id*.

On July 23, 2010, Mr. Williams protectively filed a Title II application for a period of disability and DIB. (Tr. 23). He also protectively filed a Title XVI application for SSI on the same date. *Id*. On September 21, 2010, the Commissioner initially denied these claims. *Id*. Mr. Williams then filed a written request for a hearing on October 14, 2010. *Id*.

The ALJ conducted a hearing on the matter on January 23, 2012. *Id*. On March 30 2012, she issued her opinion concluding Mr. Williams was not disabled and denying him benefits. (Tr. 35). Mr. Williams timely petitioned the Appeal

---

claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

Council to review the decision on April 19, 2012. (Tr. 128). On October 15, 2012, the Appeals Council denied a review on his claim. (Tr. 1).

Mr. Williams filed a Complaint with this court on December 14, 2012. (Doc. 1). The Commissioner answered on April 4, 2013. (Doc. 7). Mr. Williams filed a supporting brief (Doc. 10) on May 17, 2013, and the Commissioner responded with her own brief (Doc. 11) on June 18, 2013. With the parties having fully briefed the matter, the court has carefully considered the record and affirms the decision of the Commissioner.

**STANDARD OF REVIEW**

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a

preponderance." *Id*. The court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] 12 months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through December 26, 2012.

or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(I-v). The Commissioner must determine in sequence:

> (1) whether the claimant is currently employed;
> (2) whether the claimant has a severe impairment;
> (3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
> (4) whether the claimant can perform his or her past work; and
> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562–63 (7th Cir.1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

First, the ALJ found that Mr. Williams met the insured status requirements of the Social Security Act through December 31, 2014 and had not engaged in substantial gainful activity since May, 15, 2010, the alleged onset date. (Tr. 25). She then found that Mr. Williams had the following severe impairments: rotator cuff sprain in his left shoulder; multilevel degenerative disc disease, which is stable; asthma, which is stable; depression, which is complicated by use of substances; psychosis; substance abuse; mild development delay; and hypertension. *Id*. However, she concluded that Mr. Williams did not have an impairment of combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26).

Next, the ALJ determined that Mr. Williams retained the residual functional capacity ("RFC") to perform light work, except that he could stand/walk six hours in an eight-hour day; sit six hours in an eight-hour day; could lift/carry twenty pounds occasionally and ten pounds frequently; could occasionally climb ramps and stairs but not a ladder, rope or scaffolding; should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, dusts, fumes, odors, gases, and poor ventilation; should avoid all exposure to hazardous machinery and unprotected heights; could occasionally reach overhead with his left non-dominant upper extremity; could understand, remember, and complete simple instructions;

could maintain concentration and attention for at least two hour time periods in order to complete an eight-hour workday; and could adapt to changes in the workplace gradually and infrequently. (Tr. 28).

Finally, the ALJ concluded that, although he was unable to perform any past relevant work, Mr. Williams could perform occupations that existed in significant number in the national economy. (Tr. 34). Thus, the ALJ ultimately determined that Mr. Williams had not been under a disability, as defined in the Social Security Act, from September 13, 2008, through the date of this decision. (Tr. 35).

## ANALYSIS

The court may reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir.1980)).[5] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

[5] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

The Commissioner may also be reversed if the record shows that she has failed to follow the proper legal framework. *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997) ("[The court] review[s] the Commissioner's decision to determine if it is supported by substantial evidence *and based on proper legal standards*.") (emphasis added). Moreover, in contrast to the substantial evidence standard, "[n]o similar presumption of validity attaches to the [Commisioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999 (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982)).

Mr. Williams urges this court to reverse the Commissioner's decision to deny her benefits on the following grounds: (1) the ALJ failed to fully and fairly develop the record; (2) her RFC findings contained a factual inconsistency; and (3) she did not properly perform a function-by-function analysis pursuant to Social Security Rule ("SSR") 96-8p. The court finds these arguments unpersuasive.

## I. **The ALJ fulfilled her duty to develop a full and fair record.**

The ALJ has a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Nevertheless, the claimant bears the burden to prove that he is disabled and to produce medical evidence supporting his claim. 20 C.F.R. § 416.912(c); *Ellison*, 355 F.3d at 1276. Mr. Williams contends that the ALJ did not

fulfill her duty because she failed to request a medical source opinion; she did not order another consultative examination; and she did not consult a medical expert opinion pursuant to 20 C.F.R. 404.1529(b).

**A. Medical Source Opinion**

First, Mr. Williams claims that "there is no medical source opinion (MSO) by any physician of record." (Pl.'s Br. 6). There is no bright line rule about when the ALJ must request a medical source opinion from a physician. *Compare Coleman v. Barnhart*, 264 F.Supp.2d 1007, 1010 (S.D. Ala.2003) *with Green v. Social Security Admin.*, 223 Fed. App'x. 915, 923 (11th Cir. 2007). The ultimate question remains whether the decision is supported by substantial evidence. However, in the present case, the record *did* contain an MSO.

The Regulations define a MSO as follows:

> Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 404.1527(a)(2).

The record contains two MSOs from two examining physicians. Dr. Marshall Kuremsky stated, "even if manual labor is not an option for him, *he certainly would be a candidate for at least some type of modified duty.*" (Tr. 296) (emphasis added). In his Physical Summary, Dr. Robert Heilpern relied on this

MSO from Dr. Kuremsky. (Tr. 303). Dr. Heath R. Patterson also offered an MSO in his Psychiatric Evaluation. He opined that "[t]he claimant appeared motivated to mislead [the] examiner and *exaggerate or feign a number of psychiatric difficulties*." (Tr. 302) (emphasis added). He also diagnosed Mr. Williams with malingering. *Id*. The ALJ clearly had no duty to request a third MSO.

**B. Consultative Examination**

The ALJ's duty to develop the record encompasses an obligation to order a consultative evaluation or "when the evidence as a whole is insufficient to allow [the Commissioner] to make a determination or decision on [the] claim." 20 C.F.R. § 404.1519a(b). When the record does contain sufficient evidence to make an informed decision, the ALJ is not required to order a consultative examination. *See Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). Sufficient evidence does not mean "absolute certainty" regarding a claimant's condition; the Social Security Act "requires only substantial evidence to sustain the Secretary's findings." *Holladay*, 848 F.2d at 1210.

The record contained sufficient evidence to support the ALJ's findings. On June 17, 2010, Mr. Williams was building a retaining wall and suffered from heat exhaustion, cramps, and dehydration. (Tr. 257). Emergency room records indicated renal insufficiency. (Tr. 258). In July, a CT scan revealed advanced

chronic microvascular disease. (Tr. 283). Mr. Williams, however, refused to stay at the hospital and undergo a renal consult. (Tr. 286). Before this visit to the hospital, the ALJ noted that Mr. Williams had not been seen for four years, except for bronchitis and a toothache. (Tr. 29).

On August 28, 2010, Dr. Kuremsky performed a consultative examination on Mr. Williams. He noted that Mr. Williams occasionally took over the counter medications but did seek medical attention for his back pain. (Tr. 293). He further stated that Mr. Williams said he could lift ten pounds, "ambulate[d] without difficulty or limp," and was only "marginally cooperative throughout the exam." (Tr. 295).

In November 2010, Mr. Williams returned to the emergency room after being assaulted. Dr. Bryan Givhan noted that "[m]otor exams shows him to have 5/5 strength in all muscle groups in both the lower and upper extremities." (Tr. 358). Dr. Givhan further reported that a review of systems was "[d]ifficult to obtain because of the level of intoxication." (Tr. 357). An August 2011 record indicated that his microvascular disease was "stable." (Tr. 330).

Dr. Patterson performed a consultative psychological examination on Mr. Williams on September 15, 2010. Dr. Patterson opined that "mild impairments in memory may legitimately be present." (Tr. 301). He further stated:

> [H]is ability to use appropriate judgment to make acceptable work decisions and manage his funds is unknown. He did not appear to respond to the examiner in an open or honest manner. His responses to tasks meant to measure basic cognitive skills appear to reflect poor effort. This claimant's level of intellectual functioning cannot be reliably estimated at this time. However, conversationally such skills historically appear to fall within the borderline range.

(Tr. 302). Based on this exam, Dr. Robert Estock determined that there was insufficient evidence to rate Mr. Williams's mental impairments. (Tr. 304).

Mr. Williams was referred to Indian River for psychiatric treatment in August 2011. (Tr. 321). However, "[t]here is no indication that [he] followed through with the referral." (Tr. 29). On October 15, 2011, Dr. Kamal Raisini examined Mr. Williams in inpatient psychiatry at Northport Medical Center. (Tr. 336). He opined that Mr. Williams benefitted from the therapy and "gained maximum benefit from the hospital stay." *Id.* He discharged Mr. Williams with an outpatient follow-up. *Id.* Again, the record does not indicate that Mr. Williams followed through with the outpatient referral.

In January 2012, Mr. Williams sought psychiatric treatment at the Northport Medical Center. Dr. M. Omar Mohabbat noted that Mr. Williams suffered from a "grief disorder" after Mr. Williams's son stabbed and killed Mr. Williams's sister. (Tr. 413). He noted that Mr. Williams responded well to medication, and discharged him after two days. (Tr. 414).

While the record would contain more certainty if Mr. Williams had a more consistent treatment history or if Dr. Patterson had been able to perform a proper examination, the evidence of record was sufficient to allow the ALJ to make a decision on Mr. Williams's claim. Furthermore, Mr. Williams's non-cooperation with medical personnel is noted throughout the record. *See* (Tr. 29, 295, 298-302, 336, 357). As the court in the Southern District of Florida stated:

> [A] claimant has a duty to cooperate in furnishing the ALJ with or helping the ALJ to obtain available medical or other evidence about his or her impairments. When a claimant fails to cooperate in obtaining evidence, the ALJ can make a decision based on the information available.

*Levy v. Astrue*, 07-80157-CIV, 2008 WL 4753518, at *12 (S.D. Fla. Oct. 28, 2008) (citing 20 C.F.R. § 416.916). The ALJ did not err by failing to order a third consultative examination.

**C. Medical Expert**

Mr. Williams argues that the ALJ should have consulted a medical expert before making his RFC finding. The determination of a claimant's RFC is not a medical assessment. *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011) (Guin, J.) (citing 20 C.F.R. § 404.1545). Thus, the ALJ is not required to consider a medical expert opinion before making his RFC finding. *Id*. (citing 40 C.F.R. § 404.1546(c)).

**II. <u>The ALJ's RFC finding is not inconsistent with her Psychiatric Review Technique and is supported by substantial evidence.</u>**

Mr. Williams argues:

> The ALJ failed to reconcile her assessment of moderate difficulties and moderate limitations in maintaining concentration, persistence and pace ([Tr.] 26) with her finding in her RFC assessment that [Mr. Williams] can maintain concentration and attention for at least two hour time periods in order to complete and eight hour work day ([Tr.] 27).

(Pl.'s Br. 9). The court finds that there is no inconsistency in the ALJ's determinations.

The ALJ properly limited Mr. Williams to maintaining concentration for two hours and understanding and carrying out simple instructions because of his limitations in concentration, persistence, and pace. (Tr. 28). The Eleventh Circuit has found:

> Because the ALJ: (1) indicated that the medical evidence suggested Forrester's ability to work was unaffected by her moderate limitations in concentration, persistence, or pace; and (2) limited the VE's hypothetical to simple, routine, and unskilled work, the ALJ's hypothetical to the VE comprised all of Forrester's relevant limitations [in concentration, persistence, and pace.

*Forrester v. Comm'r of Soc. Sec.*, 455 Fed. App'x 899, 903 (11th Cir. 2012). The ALJ's limitations to simple instructions and two hour concentration in her RFC finding similarly addressed Mr. William's limitations in consistency, persistence, and pace. *Id.*; *see also Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. App'x 869, 871 (11th Cir. 2011) ("By including that Jarrett had limitations in her ability to concentrate, this hypothetical question adequately accounted for the ALJ's finding

that Jarrett had moderate difficulties in concentration, persistence, and pace."). The ALJ also stated that he found moderate difficulties by "giving the claimant the benefit of the doubt," suggesting that Mr. Williams's "ability to work was unaffected by his moderate limitations." (Tr. 27); *Forrester*, 455 Fed. App'x at 903. The ALJ accounted for Mr. Williams's limitations in concentration, persistency, and pace in her RFC determination.

**III. <u>The ALJ's RFC determination complied with the function-by-function requirements of SSR 96-8p.</u>**

SSR 96-8p provides:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

1996 WL 374184, at *1. The ALJ meets this requirement when he assesses the claimant's functional limitations and restrictions and then expresses his functional limitations in terms of exertional levels. *See Castel v. Comm'r of Soc. Sec.*, 355 Fed. App'x 260, 263 (11th Cir. 2009); *Freeman v. Barnhart*, 220 Fed. App'x 957, 959–60 (11th Cir. 2007);[6] *see also Bailey v. Astrue*, 5:11–CV–3583–LSC, 2013 WL 531075 (N.D. Ala. Feb. 11, 2013).[7]

---

[6] Although these unpublished cases are not controlling, this court nevertheless finds them persuasive and adopts their reasoning.

[7] This case is also not controlling, but this court finds it to be persuasive and adopts its reasoning.

The ALJ must consider all of the relevant evidence, including:

> medical history, medical signs and laboratory findings, the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured living environment, and work evaluations, if available.

SSR 96–8p at *4–*5. The ALJ, however, is not required to "specifically refer to every piece of evidence in his decision," so long as the decision is sufficient to show that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *see also Castel*, 355 Fed. App'x at 263.

The record reveals that the ALJ assessed Mr. Williams's functional limitations and considered all the relevant evidence. Before expressing her RFC finding as an exertional level, the ALJ noted and discussed Mr. Williams's trips to the emergency room, for both physical and mental problems, (Tr. 29-31); summarized Dr. Kuremsky's findings, noting that the claimant's grip strength and motor strength was 5/5, (Tr. 31); considered Mr. Williams's testimony regarding his limitations, (Tr. 32); specifically noted that Mr. Williams stated he could sometimes lift thirty pounds, *id.*; and stated that because of "his June 2010 incident of heat exhaustion and asthma, he is to avoid concentrated exposure to

extreme heat …" (Tr. 33). The ALJ performed a proper RFC function analysis, based on substantial evidence, and the court will defer to his conclusions.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court concludes that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 31st day of January, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge